IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARMAINE MCWILLIAMS, | § | |
| Individually and as Mother and Representative | § | |
| of Estate of ROBERT STEPHEN JR., deceased | § | |
| ROBERT STEPHENS SR., Individually and | § | |
| As Father of ROBERT STEPHEN JR., | § | |
| Deceased, CHANTIQUE JOHNSON as Next of | § | |
| Friend to SERENITY STEPHENS and | § | |
| JADYNE STEPHEN, Minors and Children of | § | |
| ROBERT STEPHEN JR. deceased, and | § | |
| A'NEESHA RAWLS As Next of Friend to | § | |
| NAOMI RAWLS, A  Minor and Child of | § | |
| ROBERT STEPHEN JR., deceased, | § | |
| | § | CIVIL ACTION NO. <u>17-345</u> |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| JOHN DOES 1-10, Individually and as agent | § | |
| and/or employee of CITY OF HOUSTON; | § | JURY DEMANDED |
| and CITY OF HOUSTON | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES **CHARMAINE MCWILLIAMS,** Individually, and as Mother and as Representative of Estate of ROBERT STEPHEN JR., deceased (hereinafter "Decedent"), ROBERT STEPHEN SR., Individually and as Father of ROBERT STEPHEN JR., CHANTIQUE JOHNSON as Next of Friend to SERENITY STEPHEN and JADYNE STEPHEN, Minors and Children of ROBERT STEPHEN JR., AND A'NEESHA RAWLS, as Next of Friend to NAOMI RAWLS, A Minor and Child of ROBERT STEPHEN JR. as Plaintiffs (hereinafter "Plaintiffs") filing this Original Complaint in which they are complaining of

PLAINTIFFS' ORIGINAL COMPLAINT

Defendants JOHN DOES 1-10, Individually and As Agent and/or Employee of CITY OF HOUSTON and CITY OF HOUSTON. In support of their causes of actions, Plaintiffs allege upon information and belief the following:

**INDEX OF COUNTS**

Count I—JOHN DOES 1-10 - 42 U.S.C. § 1983 Claim

Count II—JOHN DOES 1-10 - Negligence Claim

Count III—CITY OF HOUSTON- 42 U.S.C. § 1983 and 1988/*Monnell* Policy Claim

Count IV—CITY OF HOUSTON- Negligence Claim

**I.**
**PARTIES**

1.1     Plaintiff CHARMAINE MCWILLIAMS is a person of the full age of majority and a resident of the state of Michigan. CHARMAINE MCWILLIAMS sues on behalf of herself, and as representative of the estate of ROBERT STEPHEN JR, deceased, her unmarried son, who was a resident of Houston, Texas.

1.2     Plaintiff ROBERT STEPHEN SR. is a person of the full age of majority and is a resident of the state of Mississippi. ROBERT STEPHEN SR. sues on behalf of himself as father of ROBERT STEPHEN JR, deceased.

1.3     Plaintiff CHANTIQUE JOHNSON as Next of Friend to SERENITY STEPHENS and JADYNE STEPHEN, Minors, is a person of full age of majority and is a resident of the state of Michigan. Plaintiff CHANTIQUE JOHNSON sues on behalf of her children who are also children of ROBERT STEPHEN JR., deceased.

1.4     Plaintiff A'NEESHA RAWLS as Next of Friend to NAOMI RAWLS, A Minor, is a person of full age of majority and is a resident of the state of Michigan.  Plaintiff A'NEESHA RAWLS sues on behalf of her child who is the daughter of ROBERT STEPHEN JR., deceased.

PLAINTIFFS' ORIGINAL COMPLAINT

1.5      Defendants JOHN DOES 1-10 are unidentified jailers, screening officers, Houston Police

officers, and/or employees at Houston City Jailers of Defendant CITY OF HOUSTON, who was

employed at the time that ROBERT STEPHEN JR., deceased, was in police custody at Houston

Central Jail and was responsible for monitoring, observing, aiding, supervising, and overseeing

ROBERT STEPHEN JR. Defendants JOHN DOES 1-10 are residents of Texas and are a City of

Houston Police Officer. Defendants JOHN DOES 1-10 were operating under the color of law

and in the course and scope of their agency and/or employment relationship with Defendant

CITY OF HOUSTON and pursuant to the CITY OF HOUSTON'S customs, policies, practices,

which were the moving force behind the constitutional violations asserted herein. Plaintiffs will

supplement and/or amend this pleading to identify the JOHN DOES 1-10 as soon as the jailers',

screen officers', Houston Police officers', and/or employees' identities become known.

1.6      At all times material throughout this complaint, Defendants JOHN DOES 1-10, acted

under the color of law, ordinance, and/or regulation, and in the course and scope of their

employment with the Houston Central Jail and pursuant to the Defendant CITY OF

HOUSTON'S customs, policies, and practices which were the moving force behind the

constitutional violations asserted herein.

1.7      Defendant CITY OF HOUSTON is authorized by the laws of the State of Texas to

operate the Houston Central Jail. As part of its responsibilities and services, the CITY OF

HOUSTON also operates law enforcement agency (the Houston Police Department) that, among

other duties, operates and controls the CITY OF HOUSTON'S jail system, including the

Houston City Jail. Defendant CITY OF HOUSTON is located on 900 Bagby Street, Houston,

Texas 77002. Defendant CITY OF HOUSTON employed persons including Defendants JOHN

DOES 1-10 and other jail guards, screening officers, and other employees who, in the course and

PLAINTIFFS' ORIGINAL COMPLAINT

scope of their employment, were required to observe, watch over, and manage persons placed in custody within the Houston Central Jail. At all relevant times herein, CITY OF HOUSTON acted under the color of law and pursuant to certain customs, policies, and practices that were the moving force behind the constitutional violations asserted herein.  Plaintiffs will supplement and/or amend this complaint as facts become known through further proceedings, including the identities of John Does 1-10.

1.8     All statutory notice requirements have been satisfied before the filing of this lawsuit.


## II.
## JURISDICTION AND VENUE

1.9     This Court has jurisdiction over the claims raised in this Complaint under 42 U.S.C. § 1983, and 1988, and 28 U.S.C. §1331.

2.0     Venue is appropriate in the Southern District of Texas under 28 U.S.C. § 1391 as Defendants reside, and the acts complained of arose, in the Southern District of Texas.

2.1     Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims arising under the laws of the State of Texas and seeks recovery under the Wrongful Death, Survival Statutes, and Bystander claims of the State of Texas as allowed by law.

2.2     The amount in controversy exceeds $75,000.00 exclusive of interest and costs.


## III.
## FACTS COMMON TO ALL COUNTS

2.3     On or about December 27, 2015, Robert Stephen Jr., ("Decedent") was picked up by Houston Police Officers after receiving a call from a Domino's Pizza restaurant. Decedent was not dining or ordering from Domino's Pizza when the call was made. In fact, Decedent was shopping at a neighboring store when the police were called.

PLAINTIFFS' ORIGINAL COMPLAINT

2.4     On or about December 27, 2015, the alleged unknown caller informed Houston Police Officers that Decedent was acting *"suspicious."* However, this call was not made by the store in which Decedent was shopping.

2.5     On or about December 27, 2015, Houston Police Officers arrived on the scene and arrested Decedent charging him with public intoxication.

2.6     On or about December 27, 2015, Decedent was taken to a Houston Police Department central city Jailhouse located at 61 Riesner Houston, Texas 77002, and owned and operated by Defendant CITY OF HOUSTON.

2.7     On or about December 27, 2015, Decedent was then processed and jailed in Defendant CITY OF HOUSTON'S jailhouse operated by Defendants agents and employees including the Chief Jailer at the time, Sheriff Jailer at the time, and Assistant Chief Jailer at the time. Defendants knew that there were not any cameras inside of Decedent's cell and that they could not see Decedent without physically walking inside of the cell. The identities of the Chief Jailer and Assistant Chief Jailer will be disclosed, as it becomes known.

2.8     On or about December 27, 2015, personnel of Defendant CITY OF HOUSTON'S Houston Central Jail were required to search Decedent for weapons, illicit drugs, or contraband.

2.9     On or about December 27, 2015, personnel of Defendant CITY OF HOUSTON'S Houston Central Jail found no weapons, illicit drugs, or contraband on Decedent.

3.0     On or about December 27, 2015, and for the following seven (7) hours, personnel at Houston Central Jail were required to keep Decedent safe and free from physical and/or psychological injury or harm.

3.1     On or about December 27, 2015 and for the following seven (7) hours, personnel and officers of Houston Central Jail were required and obligated (and knew of this requirement) to

PLAINTIFFS' ORIGINAL COMPLAINT

physically and visually check on inmates every thirty (30) minutes. Defendant alleged to have checked on Decedent every fifteen (15) minutes for seven (7) hours, which is approximately twenty-eight (28) times.

3.2     Despite Houston Central Jail's agents, personnel, or employee's knowledge of this duty and the knowledge that there were no surveillance devices that enabled them to see into Decedent's cell, Defendants failed to meet either of the aforementioned time requirements and conducted the required face-to-face inspections.

3.3     On or about December 27, 2015, and at all times relevant herein, personnel at Houston Central Jail were required to screen and evaluate Decedent on an ongoing basis.

3.4     On or about December 27, 2015, and at all times relevant herein, CITY OF HOUSTON was required to train its jail personnel on the method and means of evaluating persons placed in custody to keep them safe from physical or psychological injury, harm or death.

3.5     On or about December 27, 2015, and at all time relevant herein, personnel at Houston Central Jail were required to screen and evaluate the health status of persons placed in custody.

3.6     On or about December 27, 2015, a Houston Central Jail personnel, one of the JOHN DOES 1-10, was a screening officer responsible for screening Decedent.

3.7     On or about December 27, 2015, Decedent complied with the requests of the Houston Central Jail personnel during their screening and evaluation of him.

3.8     On or about December 27, 2015, a suicide assessment was performed on Decedent.

3.9     On or about December 27, 2015, Houston Central Jail personnel placed Decedent in a jail cell alone.

4.0     On or about December 27, 2015, while Decedent was alone in his cell, Houston Central Jail personnel used excessive force on Decedent inflicting bruises and abrasions to his head, hand, abdomen and legs.

4.1     On or about December 27, 2015, jail personnel failed to check on Decedent every fifteen (15) and/or thirty (30) minutes.

4.2     On or about December 27, 2015, jail personnel failed to respond and/or to detect that Decedent needed medical attention.

4.3     On or about December 27, 2015, jail personnel failed to appropriately respond to Decedent after he became non-responsive.

4.4     On or about December 27, 2015, jail personnel failed to render aid, and/or provide Decedent with medical treatment after he became non-responsive.

4.5     On or about December 27, 2015, jail personnel failed to seek medical treatment for Decedent after Decedent became non-responsive.

4.6     On or about December 27, 2015, Defendants and its agents, employees, jail personnel failed to timely and appropriately administer CPR and other life-saving treatment to Decedent.

4.7     On or about December 27, 2015, just prior to Decedent becoming non-responsive and for unknown reasons at this time, jail personnel and/or another agent of Defendant CITY OF HOUSTON administered an unknown liquid substance to Decedent to drink.

4.8     On or about December 27, 2015 Defendants failed to timely request life-saving medical treatment for Decedent.

4.9     On or about December 27, 2015, Defendants failed to timely transport Decedent for the administration of timely and appropriate life-saving medical treatment.

PLAINTIFFS' ORIGINAL COMPLAINT

5.0     On or about December 27, 2015, Decedent died while under the custody and control of Houston Central Jail.

5.1     On or about December 27, 2015, Decedent was survived by his mother CHARMAINE MCWILLIAMS, his father ROBERT STEPHEN, SR., and his biological children, SERENITY STEPHENS, JADYNE STEPHEN, and NAOMI RAWLS, all minors.

5.2     Each of the Defendants caused, and is responsible for, the unlawful conduct described herein, and resulting injuries by, among other things personally participating in the unlawful conduct, acts or omissions, or acting jointly with others who did so; by authorizing, acquiescing in or setting into motion policies, practices, plans or actions that lead to the unlawful conduct; by failing and refusing with deliberate indifference to Decedent's rights, to initiate and maintain adequate training and supervision; and by ratifying the unlawful conduct that occurred by agents and officers under their discretion and control, including failing to take remedial or disciplinary action.

5.3     The Defendants each acted under the color of law and deprived Decedent of his constitutional rights, including his right to be free from excessive and unreasonable force in violation of the Fourth Amendment and pursuant to 42 U.S.C. § 1983.

5.4     Defendants were deliberately indifferent to protecting Decedent from harm and failed to prevent said harm, further failed to provide urgently needed medical care and their conduct was unreasonable in failing to protect Decedent from harm.

## IV.
## ADDITIONAL FACTS RELATED TO CITY OF HOUSTON AND HOUSTON CENTRAL JAIL

5.5 The Texas Administrative Code provides rules and regulations required under the Texas Commission on Jail Standards that must be followed by each Texas public safety correctional

facility and jail. Texas Administration Code Title 37, Part 9 directed Defendant City of Houston and its agents, employees, jail personnel, to follow several statutory requirements in their care, custody and treatment of Decedent, including but not limited to:

a. Having an established procedure for documented, face-to-face observation of all inmates by jailers no less than once every sixty (60) minutes and **at least** every 30 minutes in areas where inmates were known to be potentially suicidal;

b. Assigning hash tags which identify inmates as having special mental health needs in the inmate's medical records and bringing this to the attention of heath personnel and/or the supervisor on duty;

c. Developing and implementing a suicide prevention plan which addresses the following principles and procedures:

i. Provisions for staff training (including frequency and duration) on the procedures for recognition, supervision, documentation, and handling of inmates who are mentally disabled and/or *potentially* suicidal—supplemental training should be provided to those staff members responsible for intake screening;

ii. Procedure for intake screening to identify inmates who are known to be or observed to be mentally disabled and/or *potentially* suicidal and procedures for referrals to available mental health officials;

iii. Procedures for communication of information relating to inmates who are mentally disabled and/or *potentially* suicidal;

iv. Provisions for adequate supervision of inmates who are mentally disabled and/or *potentially* suicidal and procedures for documenting supervision; and

PLAINTIFFS' ORIGINAL COMPLAINT

v. Procedures for staff intervention prior to the occurrence of a suicide and during the progress of a suicide attempt, or serious deterioration of mental condition.

d. Developing and implementing an objective classification plan that includes principles, procedures, instruments, and explanations for classification assessments, housing assignments, reassessments and inmate needs.

5.6     During all relevant times Defendants were aware of and responsible for complying with the aforementioned rules. Despite Defendant's knowledge of this duty and obligation, agents, employees, and jail personnel at Houston Central Jail deliberately abdicated their responsibilities for the safety, security, and welfare of detainees and instead made a mockery of the so-called security rounds by failing to comply with the required timely physical and visual checks, and by knowing that the well-being of an individual could not possibly be determined through a procedure that ignored the required personal observations of the detainees.

5.7     During all relevant times, although Defendants knew that Decedent had been mentally and/or chemically unstable, that he should have been placed in a mental health high risk status, should have been provided medical care, and that he was exhibiting signs and symptoms of distress and hopelessness; they failed to provide him with any medical treatment of even physically observe him for long periods of time, and instead placed Decedent in isolation.

5.8     During all relevant times, Defendants, with specific notice of Decedent's ongoing medical issues, including risk of *potential* suicide, failed to offer or procure appropriate intervention and failed to ensure that he received the medical attention he needed for his serious, immediate, and life threatening condition.

**V.**

**CAUSES OF ACTION**

**COUNT I & II:  JOHN DOES 1-10 - 42 U.S.C. § 1983 CLAIM AND EXCESSIVE FORCE**

PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs re-allege Paragraphs 1.1-5.8 of the Complaint.

5.9     On December 27, 2015, Defendant John Does 1-10 acted under the color of law.

6.0     Decedent was in a special relationship with Defendant, within the meaning of the case law interpreting 42 U.S.C. § 1983 and the Constitution, which guarantees equal protection of the laws and prohibits any person acting under the color of federal law, from subjecting any person under custody to punitive conditions of excessive and deadly force without due process of law.

6.1     Defendants, acting under color of law and within the scope of their responsibilities or employment and authority, intentionally, and with conscious, callous, deliberate and unreasonably indifferent behavior deprived Decedent of his constitutional rights.

6.2     The Defendants' above and below described conduct, acts and/or omissions constitute deliberate indifference to Decedent's medical needs, was unreasonable and violated his rights under the Fourth Amendment to the United States Constitution, and violated 42 U.S.C. § 1983.

6.3     The above-described acts and omissions by Defendants John Does 1-10 demonstrated a deliberate indifference to and conscious disregard for the constitutional rights and safety of Decedent.

6.4     As a result of Defendants John Does 1-10's violations of Decedent's constitutional rights, Decedent suffered substantial injuries, including but not limited to physical injury, conscious pain and suffering, mental anguish, damages and ultimately, death.

6.5     Decedent exercised his rights, or attempted to do so, under the United States Constitution.

6.6     Defendants John Does 1-10 deprived Decedent of his rights guaranteed by the United States Constitution and Federal statutes.

PLAINTIFFS' ORIGINAL COMPLAINT

6.7     In the events alleged above, Defendants John Does 1-10 acted contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Decedent of his rights, privileges, and immunities secured by the U.S. Constitution  and  42 U.S.C. § 1983.

6.8     As a direct and proximate result of the foregoing, Defendants John Does 1-10, Individually and as an agent and/or employee of Houston Central Jail, deprived Decedent of his rights and privileges as a citizen of the United States, and Defendants John Does 1-10 1 caused Decedent to suffer injury and death, of which has caused the general damages requested by Plaintiffs in an amount in excess of the applicable jurisdictional amount, to be proven at trial.

6.9     The claims and causes of action for the wrongful death of Decedent are brought by his mother, father, and children Charmaine McWilliams, Robert Stephen Sr., Serentiy Stephen, Jadyne Stephen, and Naomi Rawls, minors on their own behalves and all rightful heirs, pursuant to Texas Civil Practice and Remedies Code Sections 71.002-004.

7.0     The claims and causes of action for injuries to the health, reputation and person sustained by Decedent are brought in this action pursuant to the Survival Act, Texas Civil Practice and Remedies Code Section 71.021.

## COUNT III- CITY OF HOUSTON-42 U.S.C. § 1983 AND 1988/MONNELL POLCY CLAIM

Plaintiffs re-allege Paragraphs 5.5-7.0 of the Complaint.

7.1     The actions of Defendants, which resulted in Decedent's death, were done pursuant to one or more interrelated *de facto* as well as explicit policies, practices and/or customs of the Defendant City of Houston, its agents, and/or its officials, Boards, and/or Personnel Division.

7.2     Defendant City of Houston, acting at the level of official policy, practice, and custom, with deliberate, callous, conscious and unreasonable indifference to Decedent's constitutional rights, authorized, tolerated, and institutionalized the practices and ratified the illegal conduct

PLAINTIFFS' ORIGINAL COMPLAINT

herein detailed, and at all times material to this Complaint the Defendant City of Houston, its officers and/or agents, its Boards and/or its Personnel Divisions had interrelated *de facto* policies, practices, and customs which include, *inter alia:*

> a. Failing to use reasonable force and not deadly force against decedent under Chapter 9 of the Model Penal Code, Texas § 83.001 of Liability in Tort Chapter 83: Use of Force or Deadly Force; and Texas § 9.34 of Justification Excluding Criminal Responsibility in Penal Code Chapter 9: Protection of Life or Health. Defendant John Does 1-10 is justified in using force, but not deadly force against another that is capable of causing death or serious bodily injury;

> b. Failing to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers;

> c. Failing to appropriately and timely identify serious mental attention needed by Decedent;

> d. Failing to timely refer victims like Decedent for appropriate medical services, despite clear indications of serious need;

> e. Failing and refusing to adequately and timely communicate critical information regarding decedent's unresponsive condition to health care providers;

> f. Possessing knowledge of deficiencies in the policies, practices, customs, and procedures concerning those held in custody like Decedent and approving and/or deliberately turning a blind eye to those deficiencies.

7.3     Further, the constitutional violations and damages of Decedent as described herein were directly and proximately caused by: The unofficial and/or official, tacit and/or expressed; and otherwise unconstitutional policies of authorized policy makers of the Defendants, who

deliberately ignored the reckless, negligent, willful, wanton, deliberate and/or intentional conduct of its agents, with a lack of needed medical attention, and deliberately failed to supervise and control officers so as to prevent violations of victims' rights.

7.4    Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference and unreasonably; and encouraged the Defendants to commit the aforesaid acts against Decedent, and therefore acted as direct and proximate cause of said constitutional violations and resulting injures.

7.5    The foregoing policies, practices, customs and omissions, maintained by Defendant CITY OF HOUSTON violated Decedent's constitutional rights.

### COUNT IV - CITY OF HOUSTON - NEGLIGENCE CLAIM

Plaintiffs re-allege Paragraphs 1.1-7.5 of the Complaint.

7.6    On December 27, 2015, Defendant City of Houston acted under color of law.

7.7    In the events alleged above, Defendant City of Houston acted contrary to law, and negligently, willfully, wantonly, and/or unreasonably deprived Decedent of his rights, privileges, and immunities secured by the U.S. Constitution and 42 U.S.C. § 1983.

7.8    The above-described acts and omissions by Defendant City of Houston demonstrated a negligent and even deliberate indifference to and conscious disregard for the constitutional rights and safety of Decedent.

7.9    On or about December 27, 2015, at various points in time, Decedent was not adequately monitored while in custody.

8.0    On or about December 27, 2015, Defendant's agents, personnel, employees, including but not limited to City of Houston, were negligent, willful, wanton, and/or reckless in failing to use reasonable force to keep Decedent safe and secure.

PLAINTIFFS' ORIGINAL COMPLAINT

14

8.1    On or about December 27, 2015, Defendant's agents, personnel, employees, including but not limited to City of Houston, were negligent, willful, wanton, and/or recklessly exhibited a conscious disregard for the safety of Decedent in failing to keep him free from injury, harm and death. As a result of the negligent, willful, wanton, and/or reckless acts by City of Houston which exhibited a conscious disregard for the safety of Decedent.

8.2    On or about December 27, 2015, Defendant's agents, personnel, employees, including but not limited to Defendant City of Houston, were negligent, willful, wanton, and reckless in exhibiting a conscious disregard for the safety of Decedent in failing to keep him in safe and suitable environment where he could be kept free from injury, harm, and death.

8.3    On or about December 27, 2015, Defendant's agents, personnel, employees, including but not limited to City of Houston, were negligent, willful, wanton, and/or reckless in not providing adequate medical care and attention to Decedent when he was found unresponsive in his cell.

8.4    On or about December 27, 2015, Defendant's agents, personnel, employees, including but not limited to City of Houston, did not attempt to transport Decedent to a medical facility to be seen by a physician after finding him unresponsive at the jail.

8.5    As a direct and proximate result of the foregoing, Defendant City of Houston, individually, deprived Decedent of his rights and privileges as a citizen of the United States, and caused Decedent to suffer injury and death, of which has caused the general damages requested by Plaintiffs in an amount in excess of the applicable jurisdictional amount, to be proven at trial.

8.6    The claims and causes of action for the wrongful death of Decedent are brought by his mother, father, and children Charmaine McWilliams, Robert Stephen Sr., Serentiy Stephen,

PLAINTIFFS' ORIGINAL COMPLAINT

Jadyne Stephen, and Naomi Rawls, minors on their own behalves and all rightful heirs, pursuant to Texas Civil Practice and Remedies Code Sections 71.002-004.

8.7     The claims and causes of action for injuries to the health, reputation and person sustained by Decedent are brought in this action pursuant to the Survival Act, Texas Civil Practice and Remedies Code Section 71.021.

**VI.**
**<u>DAMAGES</u>**

8.8     Defendants are jointly and severally liable for the wrongs complained of herein, either by virtue of direct participation or by virtue of encouraging, aiding, abetting, committing, and/or ratifying and condoning the commission of the above described acts and/or omissions.

8.9     Plaintiffs suffered compensatory, special, and punitive damages for the following:

   a. Extreme mental anguish and emotional distress as a result of being falsely arrested, physically assaulted, and battered by Defendants John Does 1-10 and City of Houston;

   b. Extreme physical abuse, mental anguish and emotional distress as a result of the intentional infliction of emotional distress to which Defendants John Does 1-10 and City of Houston subjected Plaintiffs;

   c. Violations of Plaintiffs' civil rights by Defendants John Does 1-10 and City of Houston;

   d. Pre- and post-judgment interest cost of Court;

   e. Punitive damages for egregious acts and omissions of Defendants John Does 1-10 and City of Houston.

8.9     Plaintiffs are entitled to attorney's fees for litigation of this matter and any such other and further relief to which Plaintiffs may be entitled.

PLAINTIFFS' ORIGINAL COMPLAINT

## VII.
## PUNITIVE DAMAGES

9.0    Plaintiffs are also seeking punitive damages for the wrongful death of Robert Stephens Jr.

## VIII.
## JURY DEMAND

9.1    Plaintiffs request that this action be heard before a jury.

## PRAYER FOR RELIEF

Charmaine McWilliams, Individually and as Mother and Representative of the Estate of Decedent, deceased, and Robert Stephens Sr., Individually and as father of Decedent, deceased, pray that for judgment on their behalves against all Defendants jointly, severally, and in solido, as follows:

    a.   Compensatory, special and punitive damages;

    b.   The cost of this action and reasonable attorney fees as provided by 42 U.S.C. §1983;

    c.   Judicial interest from date of judicial demand;

    d.   Trial by jury; and such further relief as this Court deems just and equitable.

Respectfully submitted,

THE COX PRADIA LAW FIRM PLLC

By:  _/s/ Troy J. Pradia_
Troy J. Pradia
Texas Bar No. 24011945
Fed. Bar No. 30260
Lindsey V. Marshall
Texas Bar No. 24092763
Fed. Bar No. 2591300
1415 N. Loop West, Ste. 200
Houston, Texas  77008
Tel. 713.739.0402
Fax 713.752.2812
ATTORNEYS FOR PLAINTIFFS

PLAINTIFFS' ORIGINAL COMPLAINT